IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | Criminal No.    1:21-CR-154 (TJM) |
| | ) | |
| v. | ) | **Information** |
| | ) | |
| **KRISTOFER LANDELL,** | ) | Violation(s):    18 U.S.C. § 371 |
| | ) | Conspiracy to Violate the |
| **Defendant.** | ) | Clean Air Act and to Defraud |
| | ) | the United States |
| | ) | 1 Count |
| | ) | |
| | ) | County of Offense:    Ulster |

**THE UNITED STATES CHARGES:**

**COUNT 1**
[**Conspiracy to Violate the Clean Air Act and
Defraud the United States**]

Between in or about May 2015 and August 2016, the exact dates being unknown, in Ulster County in the Northern District of New York, and elsewhere, the defendant, **KRISTOFER LANDELL,** did combine, confederate, conspire, and agree with others both known and unknown to the United States to knowingly: (i) commit offenses against the United States, that is, to violate the Clean Air Act, 42 U.S.C. §§ 7412, 7413(c), related to asbestos renovation and demolition activities involving the stripping, bagging, removal, and disposal of asbestos, performed contrary to the regulations found at 40 C.F.R. §§ 61.141, 61.145, 61.150, and 61.154 (the National Emissions Standards for Hazardous Air Pollutants, hereinafter "NESHAPs") and 12 N.Y.C.R.R. Part 56 (hereinafter "Code Rule 56"), which, among other things, implements federal NESHAPs through the New York State Department of Labor ("NYSDOL"); and (ii) defraud the United States by impeding and impairing the governmental functions of the Environmental Protection Agency ("EPA"), the Occupational Safety and Health Administration ("OSHA"), and NYSDOL in

1

enforcing federal environmental regulations and the Department of Labor and its agency, OSHA, in enforcing the federal safety and health regulations covering certain asbestos workers throughout the United States.

It was an object of the conspiracy that defendant LANDELL and other co-conspirators would illegally demolish and renovate a 258-acre industrial property consisting of numerous commercial buildings located at 200 Enterprise Drive in Kingston, New York, known as the "FIBM Site" or "Tech City Commerce Park," (hereinafter the "Site") which contained substantial amounts of regulated asbestos-containing material as that term is defined in 40 C.F.R. § 61.141 (hereinafter "asbestos" or "RACM"). Specifically, it was an object of the conspiracy to complete the demolition and renovation without following the Clean Air Act and the associated regulations governing: notification requirements; removing all asbestos prior to demolition; and wetting, stripping, bagging, and disposing of RACM. Furthermore, an additional object of the conspiracy was to conceal these activities from the EPA and NYSDOL and other inspectors and to frustrate the lawful purposes of such inspectors from enforcing the NESHAP and NYSDOL regulations.

LANDELL was a "project monitor" and "air monitor" as these terms are described in 12 N.Y.C.R.R. § 56-2, 56-3.2. The defendant received accredited training, passed a written test, and was granted a license to conduct project- and air-monitoring services in the State of New York.

Hudson River Valley Environmental LLC (hereinafter "HRVE") was an air- and project-monitoring company owned by the defendant who was licensed to conduct air and project monitoring in the State of New York. HRVE employed numerous individuals who were licensed in the State of New York to serve as air-monitoring technicians. As air- and project- monitors, the defendant, and his HRVE employees were responsible for conducting various duties required under Code Rule 56, including, but not limited to:

a) Remaining "completely independent of all asbestos abatement contractors involved with the asbestos project."  12 N.Y.C.R.R. § 56-4.3.

b) Remaining on-site at all times to observe and maintain air sampling equipment for the duration of air sample collection, which included, but was not limited to, anytime work was ongoing in containment.  12 N.Y.C.R.R. § 56-4.7(b).

c) Conducting numerous types of sampling during the duration of an asbestos project, to include, background pre-abatement air samples, preparation samples, handling air samples, and final air clearance samples.  12 N.Y.C.R.R. § 56-4.9.

d) Creating and maintaining an "air sample log," that contained, among other information, the name of the firm and the air sampling technician performing the air sampling, dates of sample collections, sampling time, flow rate of sampling pumps with pre- and post-calibrations listed, and chains of custody.  12 N.Y.C.R.R. § 56-4.5.

e) Maintaining on-site and available for inspection project, air monitoring, calibration, and other records.  *See, e.g.*, 12 N.Y.C.R.R. §§ 56-3.4(a)(2), 56-4.5, 56-4.7(b).

f) Placing air sampling equipment in accordance with the dictates of 12 N.Y.C.R.R. § 56-4.7(c)(1) – e.g., ensuring that air sampling equipment not be placed in corners or near obstructions.

g) Regularly calibrating and checking air-monitoring equipment and recording the calibrations in an air monitor log.  12 N.Y.C.R.R. § 56-4.7(b).

h) Overseeing and ensuring that the asbestos abatement contractor conducted a series of "cleanings" according to specific timetables that included waiting times of between 2 and 12 hours and always prior to conducting "final air clearances."  12 N.Y.C.R.R. § 56-9.1(a-f), 56-9.2(g).

i) Conducting a "visual inspection" of the work area prior to "final air clearances" being conducted and noting the results of that visual inspection in both the project and project monitor logs. 12 N.Y.C.R.R. §§ 56-3.4, 56-4.11(c-d).

j) Conducting final air clearance sampling within the work area after both wet cleaning was completed, which eliminated asbestos contamination from surfaces, equipment or other objects, and after no visible pools of liquid or condensation remained. 12 N.Y.C.R.R. §§ 56-9.1(d), 56-9.3(b).

k) Transmitting final air clearance sampling results to the NYSDOL district office of the Air Pollution Control Bureau and maintaining copies of such results for 30 years. 12 N.Y.C.R.R. §§ 56-3.4, 56-4.11(c).

l) Requiring asbestos abatement contractors to re-clean areas that failed either the final visual or air clearances and waiting the requisite periods after such re-cleanings. 12 N.Y.C.R.R. § 56-4.10(a), 56-9.2(g).

m) Permitting asbestos abatement contractors to dismantle the containment area only after final air clearance samples passed. That dismantling was required to occur in a specific manner and sequence that included treating the plastic barriers forming containment as contaminated and disposing of them appropriately; the cleaning and decontamination of tools; passing a series of visual inspections; and making entries in the supervisors and/or project monitor's log. 12 N.Y.C.R.R. § 56-9.1, 56-9.2, 56-9.3.

n) Making an entry in the asbestos abatement contractor supervisor's daily log by both the supervisor and the individual performing the inspection, detailing the findings of the visual inspection. The full name and NYSDOL asbestos handling certificate number of the certified individual performing the inspection was also required be documented in the

supervisor's daily log."   12 N.Y.C.R.R. 56-9.1(d), 56-11.3(e) (exempting "minor projects" from this requirement).

A2 Environmental Solutions LLC (hereinafter "A2ES") was owned, in part, by co-conspirator #1 (hereinafter "SL").  A2ES was an asbestos abatement company that employed co-conspirator #2 (hereinafter "MA") as a supervisor of several crews of asbestos handlers.

TechCity owned a 258-acre lot located at 300 Enterprise Drive, in Kingston, New York ("the Site"). Based on an "asbestos survey" drafted by defendant and shown to the SL, the Site contained at least 11 commercial buildings and covered at least 665,779 square feet collectively. The Site contained at least 410,670 square feet of friable asbestos and 6,000 linear feet of friable asbestos.

The Vice President of Property Management (hereinafter "RO") of several related New York Companies collectively referred to as "TechCity," managed all maintenance, contracting, leasing, renovation, and demolition projects at the Site.

In furtherance of the conspiracy, defendant LANDELL and other co-conspirators knowingly performed the overt acts listed below, among others:

1) Notwithstanding the mandate of 12 N.Y.C.R.R. § 56-4.3 that only a third party was permitted to perform project air sampling on asbestos projects and such monitors be "completely independent of all asbestos abatement contractors involved with the asbestos project," the defendant had financial entanglements with SL and A2ES.  More specifically, the defendant assisted SL in establishing A2ES by drafting bids and contracts, investment proposals, letterhead, insurance applications, and other documents on her behalf. Between on or about December 29, 2014, and March 30, 2016, A2ES transferred more than $13,000 to the defendant.

5

2) The defendant provided informal training to SL during and after the formation of A2ES, to include what to include and not include regarding NYSDOL's various recordkeeping requirements -- e.g., "[p]aperwork is very important.  It's more than just writing things down.  You need certain things in your log for the code rule, but you also don't want to put too much in there."

3) After the formation of A2ES, the defendant was aware that SL hired MA as a worker and supervisor who was also certified by New York State as a certified asbestos handler and supervisor.  The defendant was aware that MA was closely related to one of his own air-monitor employees.

4) On or about July 9, 2015, the defendant, on behalf of HRVE, transmitted a "proposal for air monitoring services for an upcoming asbestos project" to RO.  The proposal included daily project monitoring and air sample analysis costs.  RO thereafter approved the $30,360.00 "estimated total."

5) On or about September 15, 2015, the defendant, acting on behalf of Tech City Properties, Inc., filed "Petition No. 15-1181" for a "variance" pursuant to 12 N.Y.C.R.R. § 56-2.1(dr), wherein he requested that NYSDOL relieve the defendant and SL from some requirements of 12 N.Y.C.R.R. Part 56 that applied to asbestos abatement inside buildings on the Site.  The defendant's request was based, in part, on the presence of "asbestos pipe insulation debris scattered throughout the area."  NYSDOL rejected or modified 8 of the defendant's 15 requests for relief and imposed an additional requirement on the defendant as a project monitor – i.e., "[a] full time independent project monitor shall be on site and responsible for oversight of the abatement contractor during all abatement activities to ensure compliance with [12 N.Y.C.R.R. Part 56] and variance conditions and to ensure that no visible emissions

are generated." This variance required the defendant, and his HRVE project- and air-monitor employees to ensure that A2ES fully complied with various CAA and NYSDOL regulations to include:

a) Ensuring that those conducting the asbestos work did so consistent with current OSHA regulations. 12 N.Y.C.R.R. § 56-3.2(d)(6).

b) Ensuring that asbestos workers were required to follow all applicable NESHAPs rules and regulations relevant to RACM removal and disposal throughout the duration of an asbestos project – to include adequately wetting RACM prior to removal, carefully lowering RACM to the ground and not letting it drop, keeping RACM adequately wet until "containerized" or placed in leak-tight containers, labeling such containers, disposing of RACM as soon as reasonably practicable, and otherwise preventing any visual emissions during RACM removal and disposal. 12 N.Y.C.R.R. Subpart 56-8.

6) The defendant was provided a copy of the approved variance and was aware of its contents.

7) On or about November 9, 2015, the defendant and HRVE employees provided air and project monitoring services for TechCity, and A2ES employees and co-coconspirators conducted asbestos abatement operations without properly functioning manometers and negative air machines, or properly installed and sealed critical and other "poly" barriers.

8) On or about November 20, 2015, the defendant and HRVE employees provided air and project monitoring for TechCity, and SL, MA, and A2ES employees and co-coconspirators conducted illegal asbestos abatement operations that violated the NESHAPs and OSHA standards by climbing pipes over 30 feet in the air without fall protection or OSHA personals, removing RACM without it being adequately wetted, and letting RACM fall to the ground below where it created visible emissions.

9) On or about November 24, 2015, the defendant emailed RO, summarizing what additional information the OSHA inspector was requesting and advising RO that although SL "does have the personal air monitoring stuff on site," SL had only been conducting OSHA personals "for the past week or so," notwithstanding that abatement activities had been underway for more than two months. In that same email, the defendant indicated that A2ES workers had not been provided with fall protection devices.

10) On or about January 15, 2016, the defendant and HRVE employees provided air and project monitoring services for TechCity, and A2ES employees and co-coconspirators conducted illegal asbestos abatement operations to include failing to log manometer readings; failing to log critical barrier checks; failing to maintain critical barriers; conducting dry removal of RACM; allowing workers to exit containment without decontaminating properly; failing to provide water to the decontamination unit; initiating abatement without air sampling; conducting abatement activity without a project monitor present; failing to collect OSHA personals; allowing workers and supervisors to conduct abatement activities without a license; and failing to provide for a functioning manometer on-site. A2ES and HRVE employees and co-coconspirators also failed to visually inspect the work area between the friable and non-friable phases of abatement; and failed to maintain copies on-site of the controlling variance.

11) On or about January 22, 2016, the defendant and HRVE employees provided air and project monitoring services to TechCity, and A2ES employees and co-coconspirators conducted illegal asbestos abatement operations including filling the waste decontamination unit with so many bags that the unit could not be sealed properly; failing to provide adequate water to the decontamination unit; failing to maintain a properly functioning manometer; failing to provide adequate negative pressure inside containment; failing to log manometer readings; failing to

log critical barrier checks; and allowing workers to conduct abatement activities without their licenses.

12) On or about January 29, 2016, A2ES and HRVE employees and co-coconspirators conducted illegal asbestos abatement operations by failing to construct the new decontamination unit for the next phase of asbestos abatement work in accordance with variance 15-1181, and failing to properly conduct the breakdown of a prior work area.

13) On or about March 1, 2016, the defendant and HRVE employees provided air and project monitoring services to TechCity, and MA, and A2ES employees and co-coconspirators conducted illegal asbestos abatement operations by not properly handling, containerizing, and disposing of RACM waste; failing to maintain a decontamination unit that could be properly sealed; and having workers conduct abatement activities without their licenses.

14) On or about March 1, 2016, defendant created and transmitted a "final air clearance" letter to NYSDOL purportedly in the name of an air/project monitor who was not present at the Site and did not issue the clearance letter.

15) Between May 1, 2016, and July 31, 2016, an HRVE employee was directed to conduct final air clearances in a particular work area being abated by A2ES employees. Upon entering containment the HRVE air monitor noted that the area was not properly cleaned and that debris remained inside containment. The HRVE employee brought this to the attention of an A2ES supervisor who rebuffed her and became belligerent. The HRVE employee then brought the failure of the visual inspection to the defendant who allowed her to go home and said that he would address it. Upon returning the next morning, the HRVE employee discovered that the A2ES supervisor and other A2ES employees had broken down the containment area without letting the requisite 12-hour waiting period for re-cleaning lapse, drying, re-inspection, and

final air clearance testing.

16) On or about June 23, 2016, the defendant and HRVE employees provided air and project monitoring services for TechCity, and A2ES employees and co-coconspirators conducted illegal asbestos abatement operations without appropriate critical barriers and functioning manometers.

17) On or about July 15, 2016, the defendant and HRVE employees provided air and project monitoring services for TechCity, and A2ES employees and co-coconspirators conducted illegal asbestos abatement operations to include not properly containerizing RACM by using glove bags in lieu of leak-tight containers; failing to seal containers after disposing of RACM; not keeping RACM adequately wet after removal; not maintaining critical barriers; working without functioning manometers; and having workers conduct abatement activities without their licenses.

18) On or about August 1, 2016, SL, GY, and other A2ES employees and co-coconspirators conducted illegal asbestos abatement operations to include conducting a dry removal that produced visual emissions; conducting work without adequate critical barriers; failing to maintain sufficient negative air pressure in some work areas and entirely from others; failing to provide water to the decontamination unit; not decontaminating and properly labeling waste bags; piling bulk quantities of RACM waste into an unlined trailer; failing to maintain project logs on Site; conducting abatement activities without any project or air monitor present; and allowing A2ES handlers to hang from piping thirty feet off the ceiling to hide from inspectors. The NYSDOL subsequently shut down the Site, directed that no one was to re-enter the containment area, and issued NOVs to SL and RO.

19) During the August 2015 to August 2016 time period, the defendant, SL, and MA failed to

properly maintain, and produce upon request, various logbooks and other documents required to be maintained for 30 years pursuant to Code Rule 56.

All violation of 18 U.S.C. § 371.

JEAN E. WILLIAMS                                                Date: May      , 2021
Acting Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

/s/ Todd W. Gleason
/s/ Gary N. Donner
Trial Attorneys
Environmental Crimes Section
Bar Roll Nos. 512301, 512380